FILED

FEB 20 2007

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

******************************************************************************

| | | |
|---|---|---|
| WESLEY W. AUSTIN, | * | CIV 06-4071 |
| | * | CR 01-40077 |
| Movant, | * | |
| | * | MEMORANDUM OPINION |
| -vs- | * | AND ORDER |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent. | * | |
| | * | |

******************************************************************************

Wesley W. Austin ("Austin") filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, and the government filed a response to the motion. For the following reasons, the motion will be denied.

## BACKGROUND

In 2001, Austin was charged with nine counts of bankruptcy fraud, one count of false declaration, three counts of wire fraud and fourteen counts of money laundering. On June 10, 2002, he entered a plea of guilty to one count of bankruptcy fraud in violation of 18 U.S.C. § 152(1) and one count of false declaration in violation of 18 U.S.C. § 1623. Paragraph 4 of the plea agreement provides:

> OFFENSE LEVEL PARAMETERS: It is further understood that in connection with the defendant's plea and sentencing, the United States will assert that the base offense level upon which the defendant's sentence is to be initially calculated, pursuant to U.S.S.G. § 2F1.1(a) is six; that the offense involved a loss of more than $500,000 and pursuant to U.S.S.G. § 2F1.1(b)(1)(K), the offense level should be further increased by 10; and that in committing the offense, the defendant used more than minimal planning and pursuant to U.S.S.G. § 2F1.1(b)(2), the offense level should be further increased by two for a total offense level of 18. The defendant understands that these assertions are not binding on the Court. Further, the defendant and the United States agree that the United States Sentencing Guidelines Manual effective November 1, 1997 may be used for purposes of the above calculations.

In paragraph 13 of the plea agreement, Austin waived his right to appeal "any and all motions, defenses, probable cause determinations, and objections which defendant has asserted or could assert

to this prosecution, and to the Court's entry of judgment against the defendant and imposition of sentence, including sentence appeals under 18 U.S.C. § 3742."

Austin acknowledged at the change of plea hearing that he understood the plea agreement and told the Court he did not have any questions about it. The Court asked Austin the following:

> You understand also that if you do enter a guilty plea here today, that that is final. If you got the presentence report and it indicated a higher guideline range than you thought you were going to be subject to, you couldn't say, oh, wait a minute, I want to change my mind, I want a trial after all. Doesn't work that way, do you understand that?

Austin responded "yes" to this question. The Court accepted the plea, ordered a presentence investigation, and scheduled a date for sentencing.

The Court continued Austin's sentencing hearing on a number of occasions so that Austin could work on business transactions that, if successful, would have allowed him to repay all of the money owed to the victims in this case. During this time period, Austin paid $310,000 toward his total restitution amount of $1,598,000. The Court held status hearings on January 27, 2003, July 21, 2003, September 2, 2003, December 11, 2003, January 3, 2005, and finally sentenced Austin on April 25, 2005.

On April 25, 2005, prior to the sentencing hearing on that day, the probation officers issued to the Court and counsel an Addendum to the Presentence Report which states:

> Pursuant to United States v. Booker, 125 S.Ct. 738 (2005), the Supreme Court ruled the District Courts are not bound by the guidelines, but they must consult the guidelines and take them into account when sentencing. Therefore, the original presentence report completed on 7/22/2002 remains in place, and the supplemental presentence report prepared on 7/8/2004 may be considered by the Court when determining the advisory guideline to use in the sentencing today.

At the sentencing hearing, the Court adopted the presentence report with some adjustments. Starting with the base offense level of 6, the Court relied on the plea agreement and applied a 10 point enhancement for the loss amount rather than the 12 point enhancement applied in the presentence

2

report. Two levels were added pursuant to USSG 2F1.1(b)(2) for more than minimal planning and more than one victim. Another two levels were added pursuant to USSG 2F1.1(b)(3) because Austin was involved in bankruptcy proceedings at the time of the illegal activity alleged in the indictment. The Court rejected the two-level enhancement set forth in the presentence report for obstruction of justice after finding it would be double-counting because obstruction was inherent in the offense. The sentence was enhanced another two levels based on Austin's role in the offense under USSG 3B1.1(c). The three-level reduction for acceptance of responsibility set forth in the presentence report was adopted, resulting in a total offense level of 19. Based on a criminal history category II, the Court determined the advisory guideline range of 33 to 41 months.

Counsel for the government asked the Court to sentence Austin to the "lower end" of the "advisory guideline range." Austin was sentenced to 33 months imprisonment and three years supervised release on each count, with the terms to run concurrently. Restitution in the amount of $1,598,000 was ordered, with credit for the $310,000 already paid. In the Statement of Reasons, the Court noted that it was not bound by the Federal Sentencing Guidelines, but that the Guidelines were consulted and considered by the Court, along with the sentencing factors set forth in 18 U.S.C. § 3553(a).[1]

Austin appealed his sentence to the Eighth Circuit but the appeal was dismissed. The reason for the dismissal does not appear on the face of the Eighth Circuit's Judgment of Dismissal, but this Court assumes the dismissal was based on Austin's agreement to waive his right to appeal set forth in paragraph 13 of the plea agreement.

This § 2255 Motion followed. In the first two grounds in support of his Motion, Austin contends that it is unconstitutional for a sentencing court to find sentence-enhancing factors by a

---

[1]Prior to the final sentencing hearing on April 25, 2005, the United States Supreme Court ruled that the mandatory nature of the Federal Sentencing Guidelines rendered them incompatible with the Sixth Amendment's guarantee of the right to a jury trial, and it excised those portions of the Guidelines that made them mandatory. *United States v. Booker*, 543 U.S. 220, 245 (2005).

3

preponderance of the evidence. In the third ground, Austin claims that the presentence report was inaccurate because it does not include information that Austin was on release for three years pending his sentencing, had been gainfully employed and supporting his family, and had paid 20% of his restitution. The fourth ground indicates that Austin believes the government breached the plea agreement.

## DISCUSSION

A prisoner in custody pursuant to a federal conviction and sentence may move the court that imposed the sentence to vacate, set aside or correct the sentence:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. The right of collateral review is an extraordinary remedy and "will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998). Therefore, § 2255 actions are limited by the preclusive effect of decisions resulting from prior direct appellate review and by the doctrine of procedural default. Claims which have been raised and decided on direct appeal are precluded from further litigation under § 2255. *See Bear Stops v. United States,* 339 F.3d 777, 780 (8th Cir. 2003). On the other hand, under the doctrine of procedural default, issues that could have been, but were not, raised on direct appeal are waived and cannot be asserted for the first time in a collateral § 2255 action absent a showing of cause and actual prejudice, or a showing of actual innocence. *See United States v. Bailey,* 235 F.3d 1069, 1071 (8th Cir. 2000). Errors that are non-jurisdictional or non-constitutional cannot be raised now by Austin after he failed to raise them in a direct appeal, even if Austin could demonstrate cause and prejudice. *See Anderson v. United States*, 25 F.3d 704, 705 (8th Cir. 1994). Austin has not established cause, prejudice or actual innocence. Thus, Austin procedurally defaulted all of his claims. Nonetheless, the government addressed all of the claims, and the Court will do so.

4

I.    Sentence Enhancements

The Court interprets Austin's first two grounds for relief as a challenge to the Court's use of the preponderance of the evidence standard in enhancing Austin's sentence two levels each for more than minimal planning, violation of a judicial process, and role in the offense. This challenge fails because the Eighth Circuit has ruled that "nothing in *Booker* suggests that sentencing judges are required to find sentence-enhancing acts beyond a reasonable doubt under the advisory guidelines regime." *United States v. Pirani,* 406 F.3d 543, 551 n. 4 (8th Cir. 2005) (en banc); *see also United States v. Wade,* 435 F.3d 829, 831 (8th Cir. 2006) (recognizing that the remedial opinion in *Booker* held that judicial fact-finding by the preponderance of the evidence for sentencing purposes "does not violate the Sixth Amendment when made as part of an advisory Guidelines regime").

Following the government's Answer to his § 2255, Austin submitted a document entitled "Motion in Traverse to Governments Opposition and Brief of Law" which raises some issues that were not mentioned in Austin's § 2255 motion. (Doc. 8.)  On page 16 of this document, Austin asserts that his counsel was ineffective for failing to challenge the Court's use of the preponderance of the evidence standard. A defendant who claims to have been deprived of effective assistance of counsel must show: (1) that his lawyer's representation fell below an objective standard of reasonableness;  and  (2) that the lawyer's  deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). Austin has failed to meet either prong of this test because the law does not require district courts to find sentence-enhancing conduct beyond a reasonable doubt, and no lawyer has a duty to raise a meritless issue.

A related argument made by Austin in his "Motion in Traverse to Governments Opposition and Brief of Law" is that, prior to his sentencing, the Federal Sentencing Guidelines had been declared unconstitutional by the United States Supreme Court in *United States v. Booker,* 543 U.S. 220, 245 (2005), and thus he should not have been sentenced pursuant to the Guidelines. This argument is misplaced and Austin is not entitled to relief on this claim because, even in the aftermath of *Booker*, a district court has an obligation to determine a Sentencing Guidelines range and it serves as one of the factors for consideration in sentencing a defendant. In *Booker*, the Supreme Court held

first that the Sixth Amendment right to a jury trial attaches to findings that enhance a defendant's sentence under the federal sentencing guidelines. *See id.*, 543 U.S. at 230-244. In a separate majority opinion, the Supreme Court invalidated the provisions of the Sentencing Reform Act that make the Guidelines mandatory. The Court concluded that the Act, so modified, "makes the Guidelines effectively advisory." *Id.* at 244-267. After *Booker*, a sentencing court is required "to consider Guidelines ranges" but is permitted "to tailor the sentence in light of other statutory concerns as well. . . ." *Id.* at 245-246 (citing 18 U.S.C. § 3553(a)). Accordingly, it was not error for this Court to consult the Guidelines and take them into account when sentencing Austin.

II.     Presentence Investigation Report

Austin claims that the presentence investigation report was not accurate because it did not include information that, for three years pending his sentencing, Austin was released on bond, was gainfully employed and supporting his family, and paid 20% of his restitution. Section 2255 reaches a non-constitutional error only if it constitutes a "fundamental defect which inherently results in a complete miscarriage of justice" or an "omission inconsistent with the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994), quoting *Hill v. United States*, 368 U.S. 424, 428 (1962). In *Reed*, the United States Supreme Court rejected a state prisoner's statutory claim brought under 28 U.S.C. § 2254 on the grounds that the prisoner had neither made a timely objection nor suffered prejudice. *See Reed*, 512 U.S. at 349 ("An unwitting judicial slip of the kind involved here ranks with the nonconstitutional lapses we have held not cognizable in a postconviction proceeding").[2] Austin's allegations regarding the presentence investigation report fall far short of showing that a fundamental defect or omission occurred during the sentencing procedure in this case, and he has made no attempt to explain how the omission of the information from the report prejudiced him at sentencing.

---

[2]Although *Reed* involved a motion by a state prisoner under 28 U.S.C. § 2254, the Court noted that, "at least where mere statutory violations are at issue, '§ 2255 was intended to mirror § 2254 in operative effect.'" 512 U.S. at 340.

6

The circumstances of this case undermine any possible claim that Austin was prejudiced by omission of the stated information from the presentence investigation report. During the numerous hearings that took place from the time of Austin's guilty plea on June 10, 2002 until the final sentencing hearing on April 25, 2005, Austin presented the Court with information sufficient to convince the Court that certain business transactions might lead to payment of the restitution in full, and Austin was able to pay $310,000. The Court, therefore, postponed the final sentencing and allowed Austin to work on the business deals until it became clear that the chances of recovering any more money for the victims had subsided. That is the only reason Austin remained on release, able to work to support his family and to pay his restitution. It is true that the report does not state Austin was on release for three years pending his sentencing, had been gainfully employed and supporting his family, and had paid 20% of his restitution, but that does not render the report inaccurate, and the Court certainly was aware of those facts. Accordingly, relief on this ground must be denied.

III.   Breach of Plea Agreement

Austin claims that the government breached the plea agreement because the Court did not find a total offense level of 18 as agreed by the parties in paragraph 4 of the agreement. Austin waived this claim because he did not allege a breach of the plea agreement at sentencing, restate the terms of the agreement in open court, or move to withdraw his plea based on the alleged breach. *See United States v. Cohen*, 60 F.3d 460, 462-63 (8th Cir. 1995) (holding that defendant had "waived any objection to the government's failure to make the recommendation it had provided," and concluding that "[i]t would be unfair to permit [defendant] to sit idly by at the time of sentencing, when by exercising any one of the courses of action open to him he could have obtained a clarification and correction of the government's position, and now seek a remand for that very same purpose.").

Furthermore, the government did not breach the plea agreement. The parties' plea agreement recommendations were the type that do not bind the Court, *see* Fed. R. Crim P. 11(c)(1)(B), leaving it free to enhance Austin's sentence as it did for more than minimal planning, violation of a judicial process, and role in the offense. *See, e.g., United States v. Gillen*, 449 F.3d 898 (8th Cir. 2006) (plea

agreement was a type "B" plea agreement which did not limit the district court in any way and thus the court was not bound to sentence defendant in accordance with the agreement). Austin's total offense level was different than stipulated only because the Court, upon review of the record, agreed with the probation officer's enhancement recommendations, not because of anything the government did or failed to do. Thus, Austin is not entitled to relief on this claim.

Related to Austin's claim that the plea agreement was breached by the government is the argument made in his "Motion in Traverse to Governments Opposition and Brief of Law" that he was not adequately represented by counsel during the plea process. Specifically, Austin claims that counsel should have entered into a plea agreement that was binding on the Court instead of one that was non-binding. Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure provides that "the plea agreement may specify . . . that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply" and that "such a recommendation or request binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C). As stated earlier, a defendant who claims to have been deprived of effective assistance of counsel must first show that his lawyer's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. The Court must indulge a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Hunter v. Bowersox*, 172 F.3d 1016, 1024 (8th Cir. 1999). Non-binding agreements under Rule 11(c)(1)(B), such as the one in this case, are entered into regularly by defendants and their lawyers who appear before this Court. Binding plea agreements reached pursuant to Rule 11(c)(1)(C) are rare. The proposition that a lawyer's conduct falls below an objective standard of reasonableness if he negotiates a non-binding plea agreement is meritless, and Austin has failed to establish ineffective assistance of counsel on this basis.

IV.    Supervised Release

At sentencing, the Court ruled that, upon release from imprisonment, Austin shall be on supervised release for a term of three years on each of Counts 3 and 10. As clarified in the Amended Judgment, doc. 87, Austin's terms of supervised release are to run concurrently. In his "Motion in

8

Traverse to Governments Opposition and Brief of Law," Austin asserts that a term of supervised release is not authorized by statute and that his lawyer was ineffective for failing to object to supervised release. These arguments are mistaken. The law provides that if a term of imprisonment is imposed, the Court may impose a term of supervised release. *See* 18 U.S.C. § 3583(a). For class D felonies like Austin's, the term of supervised release shall be not more than three years on each count. *See* 18 U.S.C. § 3583(b)(2). Thus, Austin cannot prevail on his claims that supervised release is unauthorized by law and that his lawyer should have objected to imposition of supervised release.

V.    Evidentiary Hearing

An evidentiary hearing is not required on a § 2255 motion if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Thus, if the motion, files and records of the case conclusively establish that the petitioner is not entitled to relief, the Court is not required to conduct an evidentiary hearing. *See Kingsberry v. United States* , 202 F.3d 1030, 1033 (8th Cir. 2000) (stating that "an evidentiary hearing is necessary only where 'the court is presented with some reason to question the evidence's credibility'"). An evidentiary hearing is not required in this case because Austin's allegations, accepted as true, do not entitle him to relief, and the Court has been presented with no reason to question the credibility of the evidence.

VI.    Certificate of Appealability

When the district court has denied a motion under 28 U.S.C. § 2255, the Movant may not appeal without a certificate of appealability. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). A "substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if "a court could resolve the issues

"substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if "a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Austin has not made a substantial showing of the denial of a constitutional right. Accordingly,

IT IS ORDERED:

(1)     That the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, doc. 1, is denied.

(2)     That a Certificate of Appealability shall not issue on any of the claims raised in the § 2255 motion.

Dated this ⟦20th⟧ day of February, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
(SEAL)              DEPUTY

9